We're a little early, so I apologize. Your Honor, in this case under Doctrine 2-19-0926, I'll need the names of the individuals we can identify, and next, I'll need the names of the assassins accused, and the names of the agents, including Mr. Dianne Yahiro, defendant, Patricia Masick, woman defendant, arguing on behalf of the defendant, Mr. David Drank, arguing on behalf of the defendant, Mr. Jesse A. Wood. Good afternoon, Counsel. Mr. Gray. Yes, you may. Good afternoon, Your Honors. I want to begin with apologizing to the Court, and I've already apologized to Counsel. Much to my dismay this morning, when I was preparing, I read the reply brief, and the jurisdictional argument cites a case that's been reversed. The case is Almagren v. Rush Presbyterian. The Illinois Supreme Court reversed that. I'm not sure exactly how that happened. What happened was I noticed this morning, I looked up the case to print a hard copy, and it had the Supreme Court case where it said leave to appeal allowed, and then there's a little blue citation. I think when I clicked on that originally, it took me back to the appellate court, and I didn't realize I had done that. My apologies. Thank you for calling to the Court's attention, Counsel. And I reviewed the Supreme Court case that reversed that decision, and it talks about the appealability orders. And it rejected the appellate court's rationale, and I think important was that the plaintiff in that case was a party, and she brought a malpractice action or filed suit against the hospital based on the doctor's negligence. The Supreme Court said she waived her right to bar the hospital from communicating with the doctor when she filed the suit based on her mental condition. At this point, the fact that confidence may be disclosed must therefore be accepted as a given. So when she filed suit, an action based on the negligence of the hospital or for liability against the hospital for the doctor's negligence, she must have known that her medical condition was going to be at issue and that those records would be not privileged. She would have waived the patient position of privilege. So I would still rely on the marriage of Blomberg where the court ordered deposition of a treating physician, and it prevented that party from asserting the physician-patient privilege. In the instant case, and I still rely on that case, in the instant case, Patricia is not a party to the underlying action. Well, but, I mean, she wasn't named, but truly, is she a non-party? I mean, she certainly had an interest in the outcome here. Well, there's no relief sought against her. The relief is sought against her. It's one daughter suing the other, fighting about visitation of mom. By the time we get to the issuance of the subpoenas, mom is now living in Nevada with one of her sons. Basically, whether, and the reason this is, whether or not there was a power of attorney wouldn't affect power of attorney for the daughter in Illinois,  going to see mom in Nevada. The daughter in Illinois can't control who the brother lets in to see mom. But I think the issue before us is a little simpler than that. We don't have to look at all those facts. First of all, was she a party in that she can bring this action? And what type of action did she bring? Was this an action to enjoin, like in an injunctive order, or was it a discovery order? She filed it in the action between the daughters. Okay. Apparently, I don't know if the defendant daughter's attorney, John Polinski, may have brought it up to my brother, who represents the mother in the probate case. But my brother happened to be in the courtroom when the motion for the protective order was presented and stepped up and said, I haven't filed an appearance in this case. I have to get authority. And then he got authority and filed a limited appearance. So at the time the discovery orders were entered, she was unrepresented. It was the two daughters fighting, and the one daughter wanted to discover the medical records of the mom. Do we have jurisdiction at this point on this issue? Well, it was a motion brought in the underlying action seeking a permanent injunctive relief preventing the subpoena of mom's medical records. I don't know if she was required to file a whole new action to seek the injunctive relief. I hadn't considered. And nobody seemed to object to it being raised in the court below as having needed to be brought as a new action. So when that motion to enjoin was denied, unlike the case of Almgren, she has no remedy. The documents could be used at trial. Her medical records could be spread at public record at trial. There was a qualified protective order here, so that isn't necessarily true, is it? It allows her daughters to have information about her health that she may not want them to have. Well, but the suit was certainly for the trial court to be able to review the agent's conduct, and her capacity was certainly relevant to that, was it not? The agent's conduct? The daughter. The daughter's conduct is relevant. Right. Well, the daughter was the agent. Right. Her agent, correct. I don't know that you need to review Mom's physical condition to know whether what the daughter was doing was right or wrong. Well, her medical condition, her mental condition as well. She wasn't. Her capacity. Well, she denied acting under any power of attorney. If Mom was living with me, even if I don't have a power of attorney, I don't have to open the door to my brother. That would have nothing to do with Mom's mental capacity or power of attorney. Wasn't she previously her agent and then she withdrew, and that's when the daughter came in? No, what happened was shortly after the suit was filed, the daughter moved to Las Vegas, and then the mother sent a letter revoking the previous power of attorney. Right. So I don't know that she ever acted on the power of attorney. I see what you're saying. And, in fact, the daughter couldn't prevent Diane couldn't prevent the plaintiff or her children from seeing Mom in Nevada. So you're submitting that there is no physical or mental issue at this time? No. And if there wasn't an issue, it may have been a mental issue. It may have been when filed, but, for one, when the power of attorney was revoked and Mom moved, it's no longer an issue. And that's why the exception four to the patient-physician privilege doesn't apply. Okay. But I think my concern is Mom's medical records shouldn't be used. They shouldn't be disclosed to the daughters or anyone else. Those are a privilege, and Mom never waived that privilege. Mom came in and asserted the privilege and sought injunctive relief to prevent that from happening. That was the relief that was denied. So you're saying regardless of the fact that there was litigation ongoing, because she wasn't a party to it, then they weren't entitled to those records? Correct. Now, if you don't have jurisdiction, Mom has no effective way for those documents being used or seen by her daughters or a person that she may not want to know her physical condition, her mental condition, until after a trial. And there's a final order there. She still hasn't been made a party to that case. She may never be made a party to the case. Did you ever ask the court to receive the documents in chambers and review them in chambers? I did not, and it does not appear to have happened yet. My suggestion was because the subpoenas were issued without notice. There was notice of the motion, but they went out the day before the motion to enjoin was presented, that the remedy would be to have the persons that received copies of the records bring them to court and have a camera, in-camera inspection. But it never got that far because the motion was denied, the judge feeling that because they may be relevant, he was going to deny the injunctive relief. Of course, any time you assert a privilege, it's because the documents are probably relevant. That's the nature of privileges. So I think that this court should exercise jurisdiction. This is more analogous to marriage of Lombard. Here we have the denial of injunctive relief, which is appealable under 307. It wasn't a discovery order that we're appealing. We're appealing the denial of relief to stop the discovery of these documents completely and to stop the use of them or any other machination. So an appeal after a final judgment really doesn't protect mom's interests. If the documents in the case where mom's mental or physical condition should be raised is in the estate of mom, which is pending in DuPage County, where mom's attorney would have gotten notice, the GAL would have gotten notice, everyone would have gotten notice. Instead, it was brought in this case between the daughters, where really there's no issue anymore about whether or not there's been an abuse of a power of attorney that was revoked when mom's moved to Nevada. It's really pretty much that case seems to be moved. The daughter's not even seeking monetary damages to breach a fiduciary duty. Those would have flown to mom anyway because the daughter didn't owe the other daughter a fiduciary duty. The duty would have been owed to mom. So I just think that the judge erred when you allowed those to be discovered based on the fact that they acknowledge they're probably privileged, but they may be relevant. If relevancy was the basis for ignoring a statutory privilege, we'd never have privileges applying. Tell me again why you think this may be moot. What is moot? Well, the Illinois daughter, her power of attorney was revoked in writing. There's a new power of attorney for one of the sons. She moved in with one of the sons in Nevada. And if the daughter in Nebraska wants to see mom in Nevada, she should either make arrangements through the Nevada son, and if he's not capable or available to do that, in fact, I know that the daughter in Nebraska is concerned about mom's welfare and there have been wellness checks by the Las Vegas police. So there's evidence of the record of this power of attorney being revoked? Yes. I don't know. I would have to look. It was revoked and then the son now has power of attorney. Is that what you're saying? Right. But there's no evidence in the record of that power of attorney, is there? No, there isn't. So we really don't know. But the Illinois daughter who had power of attorney, that was definitely revoked in writing, and that is in the record. That was Diane, right? Yes. Thank you. I should have known. Okay, thank you, counsel. You'll have time on rebuttal. Thank you, Justices. Counsel? Thank you. Good afternoon, Justices, Presiding Justice, and please, the Court. My name is Jesse Futlick, the law firm Peck Ritchie, and I represent the appellee who's the plaintiff in the lower case, Colleen Eames. Your Honors, as a threshold issue, we believe that this appeal should be dismissed for lack of jurisdiction. Frankly, the order being appealed from is a discovery order. The motion that was brought was a discovery motion. It was a motion to enjoin, at least that's how it was started, but it was a motion to enjoin us from issuing subpoenas. Now, why should Patricia not have the ability to have relief? It's her records and her privilege, is it not, that's at stake here? It certainly is. So what relief would she have if we had no jurisdiction here? If this Court has no jurisdiction as we propose, we believe that at the initial instance, when her attorney, Mr. Drain's brother, did appear in court that day, she could have objected at that point and raised any issues at that point. The court, the trial court below, asked him if he filed his appearance in the case. He said he has not. So the court didn't entertain further objections because he wouldn't file his appearance. Moreover, there's protections in place through HIPAA. HIPAA provides a methodology to either give notice to the individual or otherwise to provide certain types of assurances to the covered entities, to the doctors, that you went into court and obtained a HIPAA-protected order. And that the discovery of the information sought is going to be limited. It's going to be subject to only the eyes of counsel and the parties in the case and the court. And that's it. And at the end of the case, those records will be destroyed. But that's after the fact. Why is she not entitled to protection of her records today, before they're disclosed? Well, I believe she is entitled to assert her privilege. We don't deny that. But under the physician privilege statute, there is an exception carved out that allows a physician to provide these medical records.  And that provides in a judicial action against an individual or a personal representative of that individual in which the physical or mental condition is an issue of that person, the physician may produce the records. So she may assert that privilege. But in the trial court, the trial court will analyze that privilege and determine if it's authorized, if the records are authorized to be disclosed under the exception to the privilege statute. And that's what the trial court looked at below after it reviewed the motion to enjoin, which asserted the privilege. And as I believe the trial court held or stated on the record, it said there's a privilege being asserted. And it looked into that and it reviewed our briefs. And I believe the court found that this fell within the exception to the privilege. But doesn't the exception apply? I mean, the privilege belongs to the patient. And Patricia or the patient herself, the person asserting the privilege, has to put her medical condition in issue for it to be an issue in the case, correct? Well, I think that depends on the interpretation of some of the prior cases that have come out on this issue. The exception to the privilege statute provides an action by or against the person that's holding the privilege. And this is an action that is, I'm sorry, or the personal representative of that individual. Which is no longer the personal representative. Allegedly. Even if that's true. Allegedly. Well, counsel represented just 10 minutes ago that there's a written revocation of power of attorney. Correct. But that does not terminate our case. That does not end our ability to pursue the breach. This statutory cause of action under section 2-10 of the power of attorney act. Yeah, but what was the purpose of the action? Wasn't it to review the agent's performance? So if the person isn't any longer the agent, what's the, it's moved now, isn't it? I mean, counsel brought that up. Why would the litigation have any reason to go forward? Because we're entitled to seek additional relief for the wrongdoing that we believe that occurred. We are seeking it under the statute. A major policy consideration, we've argued this in the trial court when the defendant brought a motion for summary judgment that was denied. Now, if this were the case, then the agent could resign or be removed every single time a cause of action is brought against them so they could get out of damages. And the statute, excuse me, the statute does not provide that the court cannot enter further damages or enter further relief against the defendant for the wrongdoing. And so we're still proceeding in that regard in the case. Now, importantly. Why did you bring this in chancery and not in the probate manner? It's a very good question, Justice. We brought this because, in chancery, because for several reasons. But one, this was an action against the agent. Under the power of attorney, we were not seeking a guardianship at that time. There are certain requirements in a guardianship that we would not have been able originally at the time to obtain, such as a doctor's report because of the isolation of Patricia Masik by her agent against not just my client, against my client, my client's brother, their grandchildren, friends in Nebraska. For various reasons, we could not do that. Now, this issue also came up in the trial court. And Judge Fullerton in the chancery court had suggested that he initially dismissed our case, said go down the hallway. We brought a motion to reconsider. He granted a motion to reconsider. Part of the action stayed there. Encouraged us to file another part of the action in the guardianship. We did that. And, frankly, that guardianship is still open without a doctor's report on trial that we need as a prerequisite because the court found it was appropriate to appoint a guardian ad litem to investigate what's going on and speak to the alleged disabled person. For over a year and a half now, she's not been able to do that. The guardian ad litem has not been able to do that because, as we allege, they're moving Patricia Masik across the country. And we can't get to her. She won't appear, even though she is counsel. She won't have a simple conversation with a guardian ad litem, a court-appointed guardian ad litem, to just say, hey, I'm fine. I don't suffer from a lack of capacity. Where's her obligation to do that? I'm sorry? Where is her obligation to do that? Well, there certainly were court orders that were entered directing her to comply. And how did you acquire jurisdiction over her? Jurisdiction remains an issue in the guardianship case. I would think so. So when you say we have not had access to her, where is her obligation to grant you access? The trial court in a guardianship proceeding prior to service has a very ‑‑ it does have a limited ability to investigate the situation, appoint a guardian ad litem to merely interview the respondent and make a determination, is effectively is what Diane Yahiro's counsel is saying correct, that she's fine? Or is my client's counsel, me, you know, correct? And other family members correct in saying, hey, we have records that seven years ago she suffers from dementia. And we have records from Diane Yahiro herself who says mom's the fifth or sixth stage of Alzheimer's. So for the mere purpose of investigating that, we believe the trial court had the authority to appoint the guardian ad litem and enter orders to allow that to occur. I will say ‑‑ You keep using permissive language. Where is mom's obligation to cooperate? A court order compelling her. That's it? There was a court order compelling her. She can be found in contempt. She was found in contempt. And her attorney at that time, it was before Mr. Drank's brother represented her, the attorney at that time accepted service of the contempt in court. There is no way she can be found in contempt in a chancery case. I mean, there's no way for her to say, hey, I don't want anybody getting my records. Like in another case where she can be found in friendly contempt because it's subpoenaed to go to the parties, not subpoenaed to go to her and then she holds on to them. Correct? So she's kind of out of the ballpark in a friendly contempt in that case. To an extent. I believe that as we've seen in other cases, doctors and medical providers take this very seriously. And they come in as third parties to these cases and they'll take a friendly contempt. Or they'll just take a contempt and say, I'm not giving this stuff up, friendly or not. They'll assert the privilege. So there is a methodology. Did they do that in this case? They did not do that in this case. So she doesn't really have any way to be found in friendly contempt here. Under these specific facts, I think it's probably difficult. Perhaps if she interfered with her doctors somehow and really directed her doctors not to comply, and then the doctors are weighing their duties to their patient versus the obligation of a court order. I think maybe that's one way to do it or otherwise interfere. Real quick, just going back to the jurisdictional issue, I believe at the end of the day, in the Almgren Supreme Court case, and I'm glad that counsel did point out that the appellate case was overturned, the Supreme Court flat out said there's really no exceptions here. This is a discovery order, and under Rule 306, 307, 308, the appellate court lacks jurisdiction to hear this appeal. So, again, we have a statute. We proceeded under the power of attorney statute, which as an element of that statute, in order to construe the agent's conduct, there has to be a finding that the principal lacks the capacity to control the agent. That's elemental. That is statutory. In these other types of cases, typically involving negligence, the courts have come and said, well, this is really just a negligence case. We don't necessarily need to know the defendant's mental condition or physical condition. Oh, they were blind at the time of the accident. Well, you know what? This is just negligence. You can just prove that they failed to abide by their standard of care, regardless of their physical or mental condition. So that's where it's come up. Now, there are few types of civil cases where mental condition is an issue because of the statute. It's statutory. We could compare the power of attorney statute to a guardianship, to guardianship proceedings, where certainly the individual, the respondent or alleged disabled person, they don't put their capacity at issue. But statutorily, we have a cause of action to bring a guardianship, a family member, whoever the petitioner may be. They could bring that action, and it's not the alleged disabled person that brought the action. It's technically against them. That statute, the guardianship statutes are intended to protect individuals alleged to be disabled. The power of attorney statute, under that statute, it's also statutory. So if you could bring this, you're effectively trying to protect the principal versus the alleged disabled person in the guardianship. The principal under the power of attorney, and you could bring this cause of action if there's a finding that the individual lacks the requisite capacity here. So we have to prove that. So in that scenario, there are some exceptions to this general, I believe, notion that the individual must affirmatively place their own condition at issue because of guardianship, because of the power of attorney statute. One of the cases I believe indicated there may be an exception under, I think, a sexually violent person statute, things of that nature. Just quickly to point out the Lumbier case that counsel referred to in his opening. That was a First District case, L-O-M-B-A-E-R, 1990. The First District case where the appellate court believed it had jurisdiction over the discovery order. The next year, 1991, this Honorable Court in 91, and I'm going to watch this, Kamach, K-M-O-C-H, I don't know if the case is silent or not, versus Klein. Even though the buzzer is now, you certainly may. In that case, it declined to follow Lumbier and said that, you know, frankly, this is a discovery order, even though it may be voked as an injunction or seeking injunction belief or injunctive order, I should say. And it declined to follow. And then we have the Supreme Court come in in 1994 in the Almgren case to say, we're going to follow the Second District in Kamach. We declined to follow Lumbier in those other cases. So, Justices, to quickly wrap this up, we believe that the appeal should be dismissed or otherwise denied. And the last case I did want to reference is Klein, K-L-A-I-N-E, a Fifth District case, to address one of your Justices' questions, where there are circumstances where notice is certainly not required to be given under HIPAA to an individual when you're seeking their medical records. Thank you, Mr. Foote. Thank you. Mr. Green. Thank you again, Justices. The first thing I want to mention is it was suggested that my brother could have argued when the motion was presented because he was in court. He didn't have an appearance on file. He didn't have authority to argue. I'm sure the court would have said, you don't have authority. You don't have an appearance on file. Are you going to file one today? Maybe then the court might have allowed it. My brother didn't even have authority to say that he would be filing one when he walked out of the courtroom because he had to contact his client to get that authority. So he couldn't argue when presented. He wasn't a counsel of record. My client wasn't even a party of record. The other thing I wanted to talk about real briefly is the Statute 802, Numbers for the Conjugal, says where the health is an issue, is an issue in the present tense. By the time this motion was brought, it was no longer an issue. It doesn't say was or is an issue. The statute specifically says is an issue. Now the son has power of attorney. Yes. The daughter had it before that? Yes. So why did they give power of attorney? Because she's living in Nevada, not in Illinois. Right, but what was the basis for giving power of attorney? I don't know, Judge. I do know I was able to look real quickly. The letter revoking the power of attorney is at page 237 through 238. The letter expressly revoking the power of attorney to the defendant, Diane. And one last thing. I don't want to belabor the issues. When I was discovering that the public court case I relied on was reversed, I did come across this morning another case, Custer v. Zero Flow Products. Did you submit a copy to your opponent? But I was going to do a no-brainer motion for me to cite it in Stanter. When I get back to the office, I was going to do a written motion. But that appears at 190285, ILAP, 2019. This is from September 6th of 2019. In that case, they talk about similar issues, and I think it supports Your Honor's jurisdiction in this case. Unless you have questions, I thank you for your time, Judge. Thank you very much, counsel. Thank you both for your arguments this afternoon. The court will take the matter under advisement and render a decision in due course. We stand in recess for a few minutes until the next case.